IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARLENE HOLMES,

        Plaintiff,                  No. CIV S-04-1975 GEB PAN

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").  For the reasons discussed below, the court recommends plaintiff's motion for summary judgment or remand be denied and the Commissioner's cross-motion for summary judgment be granted.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated March 20, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has the severe impairment of discoid lupus erythematosus[2], but that this impairment did not meet or medically equal a listed impairment; that plaintiff has the residual functional capacity to perform light work with a preclusion from outdoor jobs requiring exposure to sunlight; that plaintiff has a residual

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[2] Discoid lupus erythematosus is an a chronic skin condition of sores with inflammation and scarring, favoring the face, ears, and scalp. It is thought to be autoimmune with the body's own immune system attacking normal skin.

functional capacity to perform substantially all of the full range of light work; the plaintiff's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations; and plaintiff is not disabled. Administrative Transcript ("AT") 18-19.

Plaintiff contends that the ALJ erred by failing to consider the testimony of a vocational expert as to the impact of the nonexertional environmental limitations on plaintiff's ability to find work. This nonexertional limitation consisted of plaintiff's requirement that she avoid sun exposure.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

1335, 1338 (9th Cir. 1988).

III. Analysis

    a. The ALJ Reliance on the Grids was not Error.

The ALJ properly determined that plaintiff's capacity to perform light work was substantially intact and that her nonexertional limitations did not significantly affect her physical ability to perform work . AT 17, 19. Consequently, use of the Medical-Vocational Guidelines ("the grids") was appropriate. There was no need for the testimony of a vocational expert (VE) to determine if plaintiff retained the capacity to perform jobs that existed in significant numbers in the national economy.

In reaching his findings regarding the significance of plaintiff's nonexertional limitation, the ALJ weighed the medical evidence contained in the record. Included in this evidence were several contradictory medical opinions. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester , 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give

weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

The ALJ gave significant weight to the opinions of examining physician, Dr. Borges, and treating physician, Dr. Bass. Dr. Borges stated that there was no basis for disability. AT 15, 133. Dr. Bass agreed that there was no basis for disability; however, he added that plaintiff should strictly avoid the sun because of her lupus. AT 15, 200.

The ALJ discounted the medical opinions offered by the State Agency medical consultants, AT 15, 204-248, and examining physician, Dr. Marcel Wiggers, AT 15, 140. The State Agency and Dr. Wiggers opined that plaintiff was restricted to sedentary work with occasional postural manipulations. Id. The ALJ discounted these opinions because they were based on the subjective complaints of plaintiff and lacked any clinical foundation. Id. As they were the product of information received from a plaintiff the ALJ found was not credible, AT 18, the opinions were entitled to less weight than they might otherwise receive. See Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005) (holding that, when presented with conflicting medical evidence, the plaintiff's credibility and her subjective complaint bear on the evaluation of medical evidence); see also Batson v. Comm'r of Soc. Sec. Adm'n, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

      The ALJ assessed the credibility of plaintiff and determined that her subjective complaints did not comport with her testimony or the objective medical evidence. The ALJ noted that plaintiff's complaints of pain and disability were contradicted by her ability to handle her own personal needs, care for two teenage children, do daily housework, shop on a daily basis, maintain an active social function, play basketball, and ride a bicycle. AT 16. Furthermore, the

lack of an aggressive treatment protocol, despite regular visits to a doctor, was inconsistent with any of plaintiff's alleged mental or physical ailments. AT 17.

Based upon his assessment of plaintiff's credibility and the various medical opinions, the ALJ found plaintiff suffered from lupus, but that she was capable of light work with no substantial limitations. As a result, the ALJ resorted to the grids to determine plaintiff's disabled status. AT 19. The grids are in table form. See 20 C.F.R. Pt. 404, Subpt. P, App.2. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[3] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

---

[3] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a(c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1  (requiring significant limitation on exertional capabilities in order to depart from the grids).

2  Where the nonexertional limitations are sufficiently severe as to limit the range of work a plaintiff may do, the grids do not apply. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Desrosier, 846 F.2d at 577. "The grids describe only major functional and vocational patterns and cannot be relied upon if they fail to accurately describe a claimant's particular limitations[.]" Stewart v. Sullivan, 881 F.2d 740 (9th Cir. 1989). Significant nonexertional limitations include anxiety, depression, concentration and memory impairment, Holohan v. Massanari, 246 F.3d 1195 (9th Cir. 2001); an inability to work around fumes and difficulty expressing oneself, Moore v. Apfel, 216 F.3d 864; the need to shift positions every 30 minutes, Tackett v. Apfel, 180 F.3d 1094 (9th Cir. 1999); pain, Macri v. Chater, 93 F.3d 540 (9th Cir. 1996); incontinence, Gonzalez v. Sullivan, 914 F.2d 1197 (9th Cir. 1990); and avoidance of stressful environments, vision problems, and difficulty using one's hands to manipulate objects, Burkhart, 856 F.2d 1341 n.4.

Based upon the record, the ALJ found that plaintiff had lupus, a severe impairment. AT 18; 20 C.F.R. § 404.1520 and 416.920. The ALJ further determined that plaintiff had a residual functional capacity to "perform light work with a preclusion from outdoor jobs requiring exposure to sunlight because of [plaintiff's] lupus condition." Id. Light work is defined as "work involv[ing the] lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567.

Nonexertional limitations include, among other things, "difficulty tolerating some physical feature[] of certain work settings, e.g....dust or fumes[.]" 20 C.F.R. § 404.1569a(c)(1)(v). An environmental feature such as sunlight must be considered a nonexertional limitation under the regulations. In this regard, the ALJ's statement that plaintiff suffered no nonexertional limitations was not supported by the evidence. AT 17.

However, the ALJ's ultimate findings recognized the nonexertional limitation created by plaintiff's lupus, but found that it did not compromise her ability to do light work and

was therefore not substantial. AT 19. This finding is not in error. While avoidance of sunlight is a nonexertional limitation, it is not a *substantial* nonexertional limitation precluding the use of the grids and requiring the use of a vocational expert. "Environmental restrictions...[do] not significantly affect the potential unskilled light occupational base." SSR 83-14.

Furthermore, an overwhelming majority of sedentary work is done indoors. Id. As the ALJ properly determined that plaintiff can perform light work with the only limiting factor being exposure to sunlight, the plaintiff can also perform sedentary work with that same limitation. 20 C.F.R. § 404.1567. In fact, the primary difference between light and sedentary work is that light work requires a person to be standing or walking for much of the day. Id.

Relying on the medical evidence, the ALJ recognized plaintiff's need to avoid sunlight because her lupus limited some of the types of light work that might otherwise have been available. AT 18. However, in spite of this limitation, the ALJ found that plaintiff possessed a capacity for light work that was substantially intact. AT 19; Gonzalez v. Sullivan, 914 F.2d 1197 (9th Cir. 1990). This finding was not in error as the avoidance of sunlight in this case cannot be considered a significant nonexertional limitation. Consequently, the ALJ's use of the grids to determine that plaintiff was not disabled will not be disturbed by this court.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment or remand be denied, and

2. The Commissioner's cross-motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

1 that failure to file objections within the specified time may waive the right to appeal the District

2 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3 DATED: May 2, 2006.

/s/ John F. Moulds
UNITED STATES MAGISTRATE JUDGE

ggh13
holmes.ss.wpd